UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALIL CHAHINE, # 534769

        Petitioner,

                                CASE NO. 2:09-CV-11419
v.                              HONORABLE LAWRENCE P. ZATKOFF

GREG MCQUIGGIN,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.    Introduction**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Khalil Chahine was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, assault with a dangerous weapon, MICH. COMP. LAWS § 750.82, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, in the Wayne County Circuit Court. He was sentenced to 20 to 30 years imprisonment on the murder conviction, a concurrent term of two to four years imprisonment on the assault conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2005. In his pleadings, Petitioner raises claims concerning the exclusion of evidence and his right to present a defense, his right to confrontation, and the denial of a discovery request and his right to due process. Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated, the Court denies the petition for a writ of habeas corpus and denies a certificate of appealability.

## II.    Facts and Procedural History

Petitioner's convictions arise from the shooting death of Paul Hallis and an assault upon

Catherine Hallis in Dearborn, Michigan during the early morning hours of May 16, 2004. The

Michigan Court of Appeals provided a factual overview of the case, which is presumed correct on

habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x

730 (6th Cir. 2002), as follows:

> This case involves the shooting death of the victim on May 16, 2004 in the city of Dearborn.  There was enmity between the victim and defendant arising out of their affection for the same woman, Salwa Ali. Ali was defendant's former girlfriend, but she married the victim three months before his death.  The shooting followed an incident at a Detroit nightclub earlier in the evening in which defendant "jumped" the victim inside the nightclub. Ali El-Ozeir, who is married to defendant's sister, Leila Chahine, accompanied defendant. Catherine Hallis, the victim's cousin, Amar Alkhafaji, Ibrahim Chahrour, and Ziad Souidan accompanied the victim on the evening of the fatal shooting.  After nightclub security ejected the fighting parties, the altercation continued outside where the police restrained the victim, who had removed his belt to use against defendant.  Defendant and El-Ozeir fled in a black Mercedes.  The victim's party, with the victim driving the Suburban, attempted to locate defendant.
>
> Later in the evening, the victim located the black Mercedes and started to follow it. The Mercedes stopped or started to back up, and someone stood up through its open sunroof and fired several shots at the Suburban.  The victim was fatally wounded. At trial, defendant disputed two issues related to the shooting itself: (1) did anyone riding in the victim's vehicle possess or fire a weapon and (2) was defendant the person who fired the fatal shots while standing up through the black Mercedes?
>
> All of the four surviving occupants of the Suburban denied having or firing a gun. Three of the four identified defendant as the shooter in the black Mercedes.  One bystander witness called 911 and reported shooting between two vehicles.  But at trial, he testified that he actually only saw shots being fired from one vehicle; he did not see shots fired from the Suburban. The prosecutor also presented the testimony of a reluctant jailhouse witness who testified defendant admitted he was the shooter.

*People v. Chahine*, No. 263429, 2007 WL 601599 *1 (Mich. Ct. App. Feb. 27, 2007) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the

2

Michigan Court of Appeals, essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed Petitioner's convictions. *Id.* Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Chahine*, 480 Mich. 1168, 747 N.W.2d 226 (2008).

Petitioner, through counsel, thereafter filed his federal habeas petition raising the following claims as grounds for relief:

I. His rights to due process and a fair trial and to present a defense were violated by the decision excluding evidence of the unavailable co-defendant's statement admitting that he was the shooter, where that statement was admissible under MRE 804(b)(3) as an exception to the hearsay rule and where admission would not have been inconsistent with the pretrial ruling of the Court of Appeals because additional corroboration of that statement establishing its trustworthiness was presented at trial.

II. His rights to present a defense and confrontation were violated where the officer in charge was permitted to testify that Ali El-Ozeir's statement was not credible and Petitioner was prevented from confronting and impeaching the testimony.

III. His rights to a fair trial and to present a defense were violated by the denial of mid-trial requests for discovery of a series of audio cassette tapes that were delivered to the state prosecutor by a federal prosecutor where both the federal court and federal prosecutor indicated that the tapes were relevant to the ongoing homicide trial and may have contained exculpatory material and where the trial court refused to order the prosecution to review those tapes and declined to conduct an in camera hearing as to the discoverability of the tapes.

Respondent has filed an answer to the petition contending that it should be denied because the claims are not cognizable and/or lack merit.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521

U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

A state court's decision is contrary to clearly established law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  The "AEDPA thus imposes

4

a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court has recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v.*

5

*Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 131 S. Ct. at 785.  Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.    Analysis**

      **A.    <u>Exclusion of Statement as Substantive Evidence</u>**

Petitioner first asserts that he is entitled habeas relief because the state courts erred and denied him due process and the right to present a defense by ruling that a statement made by his brother-in-law, Ali El-Ozeir, while in custody in Lebanon, was not admissible as substantive evidence at trial.  Respondent contends that this claim is not cognizable and/or lacks merit.

The Michigan Court of Appeals described the statements as follows:

6

El-Ozeir, defendant's brother-in-law, accompanied defendant on the evening of the shooting. Thereafter, El-Ozeir purportedly fled to his native Lebanon. He allegedly was taken into custody by Lebanese authorities in connection with the death of the victim, who was also a Lebanese citizen. El-Ozeir gave three contradictory statements regarding the shooting.

On September 9, 2004, El-Ozeir purportedly confessed to a Lebanese military investigator that after defendant and the victim fought inside and outside a Detroit nightclub, El-Ozeir obtained a handgun from a person named Escot. El-Ozeir also stated that later in the evening, he and defendant were driving to El-Ozeir's house when the victim surprised them and began chasing them in his vehicle. El-Ozeir stated he saw that the victim "was holding a fire gun," so El-Ozeir came out of the sunroof and fired three shots at the victim's vehicle. El-Ozeir stated the next morning the police came to his house, but he jumped out of a window and fled to Canada. He then went from Canada to Syria, and then to Lebanon.

El-Ozeir gave a second statement on September 11, 2004, before an examining magistrate, by then he had legal counsel. In this second statement, El-Ozeir denied he shot the victim. Now, El-Ozeir stated there was conflict between the victim and defendant over a woman in whom they both had a romantic interest. He described the altercations inside and outside the Detroit nightclub. El-Ozeir stated that he was driving with the defendant riding as a passenger when the victim in a large vehicle "like a Hummer" began chasing them and shooting at them. Defendant came out of the car's roof and started shooting a "military gun" at the vehicle the victim was driving. El-Ozeir stated that he gave his first statement that was not true because military police beat him.

El-Ozeir gave a third statement after defendant's father, defendant's trial counsel, a court reporter, and a retired judge traveled to Lebanon. In response to defense counsel's questioning, El-Ozeir stated that both he and defendant were drunk on the evening in question. Defendant was driving and El-Ozeir was riding as a passenger. Later, in Hamtramck, a person named Scott gave El-Ozeir a gun. El-Ozeir and defendant went to various places until El-Ozeir saw what he believed to be the victim's truck parked the wrong way. El-Ozeir stated defendant was still driving the car. The truck followed them and the window of truck the came down and shooting started. El-Ozeir then said:

> "I hear two bullets. As soon as they shot the two bullets, I out of control. All I know, I went out of the sunroof, I start shooting to scare those people. I wasn't trying to shoot nobody. In my head, I was too drunk."

In the third statement, El-Ozeir claimed the first statement he gave was not coerced and was the truth. El-Ozeir repeated that he was drunk and thought the victim wanted

to hurt his family, to hurt him, and to kill defendant. He stated, "Right now he [the victim] is shooting on us, so believe it is too serious at this point, I got to save my life, save my family. At that second, I was too drunk, okay, this guy is trying to hurt me right now, going to hurt my family."

*Chahine*, 2007 WL 601599 *3.

Petitioner's defense to the charges was that he was not the shooter and that the shooting was done in self-defense/defense of others because the victims had firearms and shot at them. Prior to trial, Petitioner moved to admit El-Ozeir's third statement in which El-Ozeir claimed that he, and not Petitioner, was the shooter and that he acted in self-defense. The trial court initially ruled that the statement was admissible under Michigan Rule of Evidence 804(b)(3). On interlocutory appeal, the Michigan Court of Appeals peremptorily reversed that decision and ruled that the statement was inadmissible. The court explained:

> The trial court abused its discretion in granting defendant's motion in limine to admit a confederate's statement under MRE 804(b)(3). Although the declarant is unavailable, his statement did not tend to subject him to criminal liability. He admitted firing the gun at issue but stated both that he lacked the specific to intent commit either crime [FN1] and that he acted in self-defense. The declarant is out of the country and due to the absence of an extradition treaty between the United States and Lebanon, he is unlikely to be prosecuted here. While defendant contends that the declarant is being prosecuted for the same offense in Lebanon, the only evidence of this is hearsay that has not been shown to be admissible. Therefore, the declarant's statement did not tend to subject him to criminal liability that a reasonable person in his position would not have made it unless believing it to be true. *People v. Barrera*, 451 Mich 261, 270-272; 547 NW2d 280 (1996). In addition, the declarant's statement has not been shown to be trustworthy. Although there is no dispute that the declarant made the statement voluntarily, all other factors relevant to corroboration preponderate against a finding of trustworthiness. *Id*. at 273-275, 289.
>
> FN1. The two crimes were the murder of the victim and assault with intent to murder Ms. Hallis.

*Id*. at *2 (quoting *People v. Chahine*, Mich. Ct. App. No. 260932, unpublished order issued on March 15, 2005). Consequently, El-Ozeir's out-of-court statements were not admitted as substantive

evidence at trial.

Those statements, however, were deemed admissible for impeachment purposes during trial after the prosecutor "opened the door" for their use by asking a police detective if he had "any evidence" to suggest that someone other than Petitioner did the shooting and the detective responded "none." The trial court allowed Petitioner to impeach the detective with El-Ozeir's statements, but continued to deny his request to admit the statements as substantive evidence. *Id.*

Petitioner challenges the state courts' evidentiary rulings. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the errors render the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)). Accordingly, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner nonetheless asserts that he was denied due process and the right to present a defense. The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967); *see also Holmes v. South*

9

*Carolina*, 547 U.S. 319, 329-31 (2006) (state rule excluding evidence of third party guilt based solely on strength of prosecution's case violated defendant's right to present a defense); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay statements critical to defense which "bore persuasive assurances of trustworthiness," coupled with refusal to permit cross-examination of the declarant, violated defendant's right to due process). However, "a defendant's right to present evidence is not unlimited, but rather it is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury"). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interest in the criminal trial process." *Id*. When deciding if the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. The question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers*, 410 U.S. at 302.

On direct appeal, the Michigan Court of Appeals denied relief on this claim applying the law

of the case doctrine to affirm its prior ruling and finding that Petitioner failed to establish a
constitutional violation.  The court explained in relevant part:

> The issue previously decided by this Court was whether El-Ozeir's third statement
> was admissible under an exception to the rule against hearsay for a statement by an
> unavailable declarant when the
>
> > ... statement which was at the time of its making so far contrary to the
> > declarant's pecuniary or proprietary interest, or so far tended to
> > subject the declarant to civil or criminal liability, ... that a reasonable
> > person in the declarant's position would not have made the statement
> > unless believing it to be true. A statement tending to expose the
> > declarant to criminal liability and offered to exculpate the accused is
> > not admissible unless corroborating circumstances clearly indicate
> > the trustworthiness of the statement. [MRE 804(b)(3).]
>
> Here, defendant has failed to establish that El-Ozeir's third statement would tend to
> subject him to criminal liability in a real and tangible way. So, defendant has failed to
> establish that this Court's prior determination was clearly erroneous. We decline
> to revisit this issue.
>
> Next, contrary to defendant's argument, the trial record does not provide any basis
> for concluding El-Ozeir's statement was trustworthy, so defendant has again
> provided no basis for concluding that this Court clearly erred in its prior order. Nor
> has defendant provided any basis for concluding that an injustice has occurred as a
> result of the exclusion of El-Ozeir's statement as substantive evidence. This is
> especially so in light of the fact that the trial court ruled during the course of the trial
> that the prosecution had opened the door to placing before the jury for impeachment
> purposes El-Ozeir's statements that he was the shooter, not defendant. Thus, there is
> no reason not to apply the law of the case doctrine.
>
> * * *
>
> Defendant's final argument on this issue, that the exclusion of El-Ozeir's third
> statement violated his constitutional right to due process is based on two false
> premises: (1) that the statement bore assurances of trustworthiness and (2) that the
> statement was critical to the defense. As more fully discussed above, El-Ozeir's
> statements in Lebanon were correctly determined as a matter of law to bear
> insufficient indicia of trustworthiness to be admissible under MRE 804(b)(3). The
> very process of deciding admissibility of hearsay under that rule takes into
> consideration the accused's constitutional right to present a defense. *Barrera, supra*
> at 279. Further, defendant was not precluded from presenting his own testimony
> regarding whether El-Ozeir was the shooter, or whether [the] shooting was an act of
> self-defense. Additionally, defendant was able to spread before the jury, albeit for

11

impeachment purposes, that El-Ozeir had made statements that he, not defendant, was the shooter. Under these circumstances, defendant was not denied a fair trial. *See Chambers, supra* at 303 (the facts and circumstances of each case must be examined to determined if an evidentiary ruling denies an accused a fair trial).

*Chahine*, 2007 WL 601599 at *4.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has failed to establish that the state courts' rulings denied him due process. El-Ozeir's third statement was inadmissible hearsay under the Michigan Rules of Evidence and did not fit within the exception provided for statements against penal interest. *See* Mich. R. Evid. 804(b)(3). The statement did not subject El-Ozeir to criminal liability in the United States because he fled the country and was in Lebanon when he made the statement and he was not subject to extradition. While the defense asserted that El-Ozeir would be subject to prosecution in Lebanon, counsel offered no valid evidence to support that assertion or show what punishment he could face. Moreover, El-Ozeir's third statement was not truly a statement against penal interest given that he asserted that he did not mean to hit anyone and claimed that the shooting was done in self-defense, which would absolve him of criminal liability. *See, e.g., United States v. Shryock*, 342 F.3d 948, 981-82 (9th Cir. 2003) (discussing similar federal evidentiary rule). Additionally, El-Ozeir's third statement was not trustworthy given that it was inconsistent with his prior statements in several respects and it directly conflicted with his second statement in which he denied being the shooter. The statement was further subject to question because of the familial relationships among the parties involved in the incident, *i.e.*, El-Ozeir may have made his statement to assist his brother-in-law in defending against a murder charge and possible life sentence in the United States. Consequently, the state court's refusal to admit the statement as substantive evidence was reasonable and a matter within its discretion under state

evidentiary rules.  No due process violation occurred.

Second, the state courts' evidentiary rulings did not deny Petitioner the right to present a defense.  Although the state courts did not allow El-Ozeir's out-of-court statements to be admitted as substantive evidence, the trial court allowed them to be used to impeach Detective Muscat's testimony, consistent with state evidentiary rules.  The jury was thus aware that El-Ozeir made a statement claiming he was the shooter and that the shooting was done in self-defense and could consider the statement for impeachment purposes.  More importantly, Petitioner was able to challenge the prosecution's witnesses and the state's evidence through cross-examination.  He also had ample opportunity to present admissible evidence, including his own testimony, that he was not the shooter and/or that the shooting was done in self-defense.  In fact, the defense was able to highlight Salwa Ali's testimony that she spoke to the victim shortly before the shooting and he thought that Petitioner was driving the other vehicle, as well as her testimony that the victim had a history of confronting Petitioner and was often armed with a weapon.  Petitioner thus had a meaningful opportunity to present a complete defense at trial.  *See, e.g., Wynne v. Renico*, 606 F.3d 867, 870-71 (6th Cir. 2010) (state trial court did not violate petitioner's right to present a defense at murder trial by excluding propensity evidence of third party guilt where defendant had opportunity to present other, proper evidence in support of defense theory).

Petitioner cites *Holmes*, *supra* and *Chambers*, *supra*, in support of his constitutional claim.  However, nothing in those cases requires that a trial court allow the admission of untrustworthy hearsay statements as evidence of third party guilt in order to satisfy the Constitution.  *See, e.g., United States v. Phillips,* 198 F. App'x 558, 561 (7th Cir. 2011) (citing *Holmes* and *Chambers*).  In *Holmes*, the Supreme Court held that a defendant's due process rights were violated by a state

court's application of an evidentiary rule which precluded the defendant from introducing evidence of third-party guilt if the prosecution had introduced forensic evidence that, if believed, strongly supported a guilty verdict. The Court found that the rule improperly focused on the strength of the prosecution's case instead of the probative value or the potential adverse effects of admitting the defense's third-party guilt evidence. *Holmes*, 547 U.S. at 321, 331. In *Chambers*, a murder defendant called as a witness a man who had previously confessed to the murder. When the witness repudiated his confession, the defendant was not allowed to examine him as an adverse witness based upon a state rule which barred parties from impeaching their own witnesses. The defendant was also not allowed to introduce evidence that the witness had made self-incriminating statements to other people because state hearsay rules did not include an exception for statements against penal interest. The Supreme Court held that the limitation on cross-examination combined with the exclusion of the witness's out-of-court statements resulted in a constitutional violation. *Chambers*, 410 U.S. at 294-97, 302. In this case, the state courts refused to admit El-Ozeir's statements as substantive evidence based upon Michigan's hearsay rule and a determination that those statements did not fall within the exception for statements against penal interest. The state courts did not run afoul of *Holmes* or *Chambers*. *See, e.g., Inman v. Warden*, No. 11-12417, 2012 WL 413993, *2-3 (11th Cir. Feb. 10, 2012) (unpublished case denying habeas relief on similar claim). Petitioner has failed to establish that the state courts' evidentiary rulings were contrary to or an unreasonable application of Supreme Court precedent or that they otherwise violated his constitutional rights.

Lastly, even if the state courts erred in refusing to allow El-Ozeir's third statement to be admitted as substantive evidence at trial, such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have

14

a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit). The prosecution in this case presented significant evidence of Petitioner's guilt at trial. In particular, witnesses testified that Petitioner, not El-Ozeir, was feuding with the victim over a woman, three eyewitnesses identified Petitioner as the shooter, all of the occupants of the victims' car denied having or firing any weapons, the police did not find shell casings in the victims' vehicle nor bullet holes in the perpetrators' vehicle, the police recovered gunshot residue from Petitioner's shirt which was consistent with firing a gun, and a fellow inmate testified that Petitioner admitted shooting the victim. Additionally, the record reveals that the trial court instructed the jury on the charge of aiding and abetting. Thus, even if the jury believed that El-Ozeir was the shooter, they could still have convicted Petitioner as an aider and abettor to the crime given that he drove the vehicle, that he and/or El-Ozeir was armed with a gun, that he engaged the victims' vehicle during the confrontation, and that he fled the scene with El-Ozeir after the shooting. Given such circumstances, any error arising from the state courts' evidentiary ruling was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

B.     Limitation on Impeachment Evidence

Petitioner next asserts that he is entitled to habeas relief because the trial court violated his rights to present a defense and confrontation by not allowing defense counsel to present evidence about the circumstances surrounding El-Ozeir's statements in order to impeach Detective Muscat after Muscat commented on the credibility of El-Ozeir's statements. Respondent contends that this

15

claim lacks merit.

During trial, the trial court ruled that the prosecutor "opened the door" to use El-Ozeir's out-of-court statements for impeachment purposes after the prosecutor asked Detective Muscat the following question:

Q: You have any evidence that suggests that someone else besides Mr. Khalil Chahine did the shooting?

A: None, Sir.

*Chahine*, 2007 WL 601599 at *2. While being questioned about El-Ozeir's statements, Detective Muscat testified that he did not believe that El-Ozeir's third statement was credible in order to explain his answer that there was no evidence that someone other than Petitioner was the shooter. *Id. at* *5. Defense counsel then sought to admit evidence of the circumstances surrounding El-Ozier's third statement. The trial court refused to allow such testimony, finding that it was precluded by the Michigan Court of Appeals' interlocutory order concerning the statements.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314. The right of cross-examination, however, is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among

16

other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998). The Confrontation Clause "guarantees an opportunity for cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

The Michigan Court of Appeals considered this issue on direct appeal and denied relief. The court stated:

> Next, defendant argues that the trial court erred by precluding evidence regarding the circumstances surrounding El-Ozeir's third statement after the court permitted Detective Muscat to testify that he did not believe El-Ozeir's statements were credible. Defendant argues that it is improper for one witness to comment on the credibility of another witness. *People v. Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Defendant also argues he was denied his constitutional right to present a defense and to confront through cross-examination witnesses that testify against him. Defendant again asserts the ruling denied his constitutional right to due process because El-Ozeir's statement bore assurances of trustworthiness and was critical to the defense. *Chambers v. Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). We disagree.

> Because El-Ozeir was not a witness, and his out-of-court statements were not admitted to prove the truth of the matters asserted, the general rule prohibiting one witness from commenting on the credibility of another witness is inapposite. That rule is premised on the fact that the determination of the credibility of witnesses is the function of the trier of fact. *Buckey, supra* at 17. Accordingly, such testimony is not relevant. *Id*. Here, the officer's testimony that he did not find El-Ozeir's statements credible was admitted only to explain his answer that there was no evidence of someone other than defendant who was the shooter. Moreover, the trial court limited the jury's consideration of the evidence to the credibility of Detective Muscat. Thus, the credibility of the El-Ozeir's statements was not before the fact finder. As the *Buckey* court observed, a proper limiting instruction by the trial court will alleviate any potential prejudice even when improper testimony regarding the credibility of another witness is received. *Id*. at 18.

> Likewise, the trial court did not abuse its discretion denying defendant's request to admit evidence of the circumstances surrounding El-Ozeir's third statement. Because

17

the trial court did not admit El-Ozeir's statements for substantive purposes, attacking and supporting his credibility was not relevant and was a collateral issue.[FN2] Thus, the trial court properly excluded the proposed evidence under both MRE 402 ("Evidence which is not relevant is not admissible."), or MRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). "[G]enerally a party may not introduce extrinsic evidence to contradict a witness regarding collateral, irrelevant, or immaterial matters." *People v. Lester*, 232 Mich App 262, 275; 591 NW2d 267 (1998), citing *People v. Vasher*, 449 Mich 494, 504; 537 NW2d 168 (1995).

> [FN2] Defendant does not argue that MRE 806 might apply. That rule provides in part: "When a hearsay statement ... has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." MRE 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." So, MRE 806 must be limited to situations where "hearsay" has been admitted as substantive evidence of the truth of the matter asserted.

For the same reasons, the trial court did not deny defendant his constitutional right to present witnesses in his defense or confront witnesses against him. "Neither the Sixth Amendment's Confrontation Clause nor due process confers on a defendant an unlimited right to cross-examine on any subject." *People v. Canter*, 197 Mich App 550, 564; 496 NW2d 336 (1992). The right of confrontation "does not include a right to cross-examine on irrelevant issues and may bow to accommodate other legitimate interests of the trial process or of society." *People v. Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). The Confrontation Clause, however, does guarantee an accused a reasonable opportunity to test the truth of a witness' testimony. *Id*. Here, the trial court afforded defendant that opportunity.

*Chahine*, 2007 WL 601599 at *5.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The circumstances surrounding El-Ozeir's statements were not relevant given that those statements were only deemed admissible for impeachment purposes. Detective Muscat's credibility, not El-Ozeir's credibility, was at issue. The

18

trial court properly limited the inquiry into such matters for the purpose of clarifying Detective Muscat's statement and to allow for impeachment of his testimony.  The court did not allow questioning about the circumstances surrounding El-Ozeir's statements because it would have been a collateral, time-consuming matter.  The trial court's ruling was reasonable and within the bounds of state evidentiary rules.  More importantly, for purposes of habeas review, defense counsel had the opportunity to impeach Detective Muscat with El-Ozeir's statements and to otherwise question him about his investigation of the shooting.  Defense counsel was not precluded from presenting relevant and admissible evidence in support of Petitioner's defense that he was not the shooter and/or that the shooting was justified.  The trial court adequately protected Petitioner's rights of confrontation and to present a defense at trial.  Petitioner has failed to establish a constitutional violation.

Moreover, even if the trial court erred in limiting the impeachment testimony, Petitioner is not entitled to relief because any such error was harmless.  As explained *supra*, for purposes of federal habeas review, a constitutional error that implicates trial procedures is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  Confrontation errors, like other trial errors, are subject to harmless error analysis.  *See Delaware v. VanArsdall*, 475 U.S. at 684.  In this case, the trial court allowed defense counsel to impeach Detective Muscat with El-Ozeir's statements themselves and to inquire about the police investigation of the crime.  The jury thus had sufficient basis to evaluate Detective Muscat's credibility.  Additionally, as discussed *supra*, the prosecution presented significant evidence of Petitioner's guilt at trial, including the ongoing dispute between Petitioner and the victim, the eyewitness testimony identifying Petitioner as the shooter, the gunshot residue on Petitioner's

clothing, the testimony and crime scene evidence indicating that gunshots were fired from Petitioner's vehicle and not the victim's vehicle, and Petitioner's own admission to a fellow inmate that he committed the shooting.  Given such circumstances, any error in refusing to allow defense counsel to inquire into the circumstances surrounding El-Ozeir's statement was harmless under *Brecht*.  Habeas relief is not warranted on this claim.

      C.     <u>Non-Disclosure of Evidence Claim</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in denying his discovery request for audiotapes which were given to the prosecutor during the course of trial and may have contained information helpful to the defense.  Respondent contends that this claim lacks merit.

During trial, federal authorities seized audiotapes from Petitioner's father's restaurant business pursuant to a search warrant issued in an unrelated investigation of Petitioner's father. Several of those tapes were given to the Wayne County Prosecutor's Office because they contained information relevant to Petitioner's trial - namely conversations between Petitioner's father and potential defense witnesses.  Defense counsel asked to review the tapes or have the court conduct an *in camera* review.  The trial court denied both requests, but ordered the prosecutor to disclose any exculpatory information found on the tapes, which he agreed to do.  The court also precluded the prosecutor from using the tapes to impeach defense witnesses at trial.  The Michigan Court of Appeals described the tapes as follows:

> The only suggestion in the record that the tapes contained material exculpatory to defendant is defense counsel's equivocal representation of double or triple hearsay attributable to a federal prosecutor that the tapes either contained evidence exculpatory to defendant or evidence of an effort to obstruct justice. One of defense counsel's intervening sources for this information was a news reporter. When the trial court asked defense counsel if he had even spoken directly to the federal prosecutor,

counsel admitted he had not. Further, defense counsel acknowledged that a newspaper article regarding the tapes seizure did not support counsel's claim the tapes contained exculpatory material.

Rather, than containing exculpatory material, the record indicates that defendant's father prepared the tapes in anticipation of his son's trial. Further, up until the time that the federal authorities seized the tapes, the same attorneys represented defendant and his father. There is nothing to indicate any prosecution witnesses were tape recorded. Indeed it appears that only potential defense witnesses from whom defendant's father sought to elicit or solicit testimony provided tape recorded statements. The prosecutor noted the tapes were the focus of an investigation into an effort to obstruct justice, and acknowledged the tapes might be usable to impeach the testimony of persons recorded if they were called to testify at the trial.

*Chahine*, 2007 WL 601599 at *7.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The United States Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose favorable impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150,

154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 f.3d 1365, 1370-71 (6th Cir. 1994). Moreover, a *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its non-disclosure. *See United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, in order to establish a *Brady* violation, a petitioner must show that: (1) the evidence was suppressed by the prosecution in that it was not known to the petitioner nor available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

> The Michigan Court of Appeals denied relief on this claim, stating in relevant part:
>
> Here, the audiotapes at best contained material that the prosecutor could use to impeach defense witnesses. Such evidence is not favorable to the accused under *Brady*. In *Brady*, the Supreme Court held that, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady, supra* at 87. In *Bagley, supra* at 676, the Court held that the *Brady* rule extended to a prosecutor's failure to disclose evidence that the defense might have used to impeach the government's witnesses. "Impeachment evidence ... as well as exculpatory evidence, falls within the *Brady* rule." *Bagley*, supra at 676. In this case, there has been no showing the tapes would be useful to impeach the prosecution's witnesses; therefore, defendant has not shown the tapes were "favorable to the accused" within the meaning of the *Brady* rule.
>
> But, even assuming the audiotapes contained evidence favorable to defendant, defendant had access to the tapes before their seizure through his father, and even after the tapes were seized by federal authorities, defendant through the exercise of reasonable diligence could have produced the substance of the audiotapes' contents through testimony by the persons whose conversations had been recorded.

22

Moreover, it cannot be said that the prosecutor suppressed evidence, whether favorable or not to defendant. The audiotapes themselves would be inadmissible hearsay. Defendant could easily have produced the substance of whatever relevant matters were discussed in the recorded conversations by calling as witnesses the persons whose conversations were recorded. Additionally, under the trial court's ruling, defendant would have been able to present these potential witnesses without fear that they would be impeached with the content of audiotapes.

Finally, because the prosecutor's possession and retention of the audiotapes did not preclude defendant from presenting as admissible testimony the substance of whatever they contained, defendant cannot establish "that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Cox, supra* at 448; *Lester, supra* at 281.

In conclusion, no error warranting reversal occurred with respect to the audiotapes that came into the prosecutor's possession mid-trial.

*Chahine*, 2007 WL 601599 at *8-9.[1]

The state courts' denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has not met his burden of establishing a *Brady* violation. First, Petitioner has failed to show that the evidence was "suppressed" given that the tapes contained recorded conversations between Petitioner's father and potential defense witnesses. While the tapes themselves were within the prosecutor's control after being seized, the substance of the conversations was available to Petitioner through his father and the recorded parties. Second, Petitioner has failed to show that the tapes contained favorable or exculpatory information. The tapes themselves were inadmissible hearsay (barring an exception), and it appears from the record that the tapes, at best, contained information which could have been used to impeach defense witnesses. Such information was neither exculpatory nor favorable to the

---

[1] The Michigan Court of Appeals also ruled that Petitioner was not entitled to relief under state law. *Chahine*, 2007 WL 601599 at *6-7. Petitioner does not appear to challenge that ruling. In any event, federal habeas relief is unavailable for a perceived violation of state law. *See Estelle, supra.*

23

defense.  Additionally, the trial court required the prosecutor to disclose any exculpatory evidence, which he agreed to do, and barred the prosecutor from using the tapes to impeach defense witnesses at trial.  Given such circumstances, Petitioner has failed to establish a *Brady* violation.  He has also failed to show that he was denied the right to present a defense.  Petitioner was aware of the tapes at the time of trial and knew that they contained conversations between his father and potential defense witnesses.  He could have simply asked his father and/or those witnesses to testify at trial.  He has not shown that having access to the tapes would have benefitted his defense.  Petitioner has thus failed to establish that the prosecutor committed a *Brady* violation or otherwise violated his constitutional rights.  Habeas relief is not warranted on this claim.

## V.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Having considered the matter, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas

claims.  Accordingly, the Court **DENIES** a certificate of appealability.

       **IT IS SO ORDERED**.

                               s/Lawrence P. Zatkoff

                               LAWRENCE P. ZATKOFF

                               UNITED STATES DISTRICT JUDGE

Dated:  June 11, 2012

CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 11, 2012.

                               s/Marie E. Verlinde

                               Case Manager

                               (810) 984-3290